Paul S. DAVIS, Plaintiff-Appellant,

v.

Donald J. DEVINE, Director, Office of Personnel Management, Defendant-Appellee.

No. 83–1110.

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1984.

Decided June 15, 1984.

Rehearing Denied Aug. 7, 1984.

Paul S. Davis, pro se.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Paul Blankenstein, Robert G. Dumas, Civ. Div., Dept. of Justice, Washington, D.C., William Kanter, Peter R. Maier, Carlene McIntyre, argued, Barbara L. Herwig, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant-appellee.

Before KEITH and KRUPANSKY, Circuit Judges, and REED, District Judge.*

---

* Hon. Scott Reed, District Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

**1110**

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Paul S. Davis (Davis) has appealed the entry of judgment in favor of defendant-appellee in this mandamus/age discrimination action.

This action commenced January 19, 1981 when Davis, a former federal employee who receives a civil service annuity, filed his complaint alleging that the defendant, Donald J. Devine, the Director of the Office of Personnel Management, had improperly refused to certify Davis as a candidate for a permanent position as an administrative law judge. The complaint, and Devine's decision not to certify Davis, invoked two federal laws: (1) 5 U.S.C. § 3323(b), which permits government reemployment of a civil service annuitant in any position "for which he is qualified", but which also mandates that the reemployed annuitant "serves at the will of the appointing authority"; and, (2) a provision of the Administrative Procedure Act (A.P.A.), 5 U.S.C. § 7521, which ensures that administrative law judges (a.l.j.) are removable only for cause. Davis sought a declaratory judgment, a mandamus order, and other relief. Specifically, he petitioned the court for an order and decree instructing the Office of Personnel Management (O.P.M.) to certify him to the register of administrative judges, and a declaratory judgment adjudging invalid O.P.M.'s policy against the employment of civil service annuitants as a.l.j.s. Cross-motions for summary judgment were filed and, on January 14, 1983, the district court granted O.P.M.'s motion, 554 F.Supp. 1165. Davis then prosecuted this timely appeal.

Briefly, the factual events precipitating this lawsuit are as follows. Davis had voluntarily severed from federal service in May 1956, with annuity eligibility in 1971. Pursuant to the Civil Service Retirement Act, 5 U.S.C. § 8301 *et seq.*, he received and continues to receive an annuity reflecting his civilian and military employment by the federal government.

In June 1974, he was appointed to serve as a temporary administrative law judge with the Social Security Administration. His jurisdiction was limited to applications for benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969. His initial one year appointment was subsequently extended. In 1977 Davis was informed that his term was not authorized for a further extension beyond June 30, 1977.

On March 10, 1977, he applied to the Civil Service Commission (the predecessor of O.P.M.) for appointment as an administrative law judge. The cover letter accompanying the application requested reconsideration of the Commission's policy decision foreclosing appointment of annuitants as permanent administrative law judges. Davis asserted that the policy conflicted with the statute ensuring tenure to an a.l.j. and, that it also conflicted with the Age Discrimination in Employment Act.

On December 8, 1977, the Office of the Administrative Law Judges (O.A.L.J.), an O.P.M. agency responsible for management of the a.l.j. system, notified Davis that he had not qualified for the GS-15 level a.l.j. position. In January, 1978, Davis filed an F.O.I.A. request for documents relative to this decision. The documents were disclosed to Davis and, subsequently, the O.A.L.J. elected to reconsider Davis's application.

Upon reconsideration, the O.A.L.J. reaffirmed its original determination and Davis petitioned for review by O.P.M.'s appeal review board. The appellate review board reversed the O.A.L.J. and Davis was certified as having the minimum qualifications for the a.l.j. position. The review board, however, declined to speculate on the propriety of appointing an annuitant to a position from which an appointee was removable only for cause. The matter was therefore returned to the O.A.L.J. for "determination by that office regarding ... possible ineligibility based on annuitant status".

The O.A.L.J. referred the issue to the agency's General Counsel for an opinion. On August 14, 1979, the O.A.L.J. informed Davis that he had obtained an eligible rating for the a.l.j. position, that his name was being placed on the register of eligible a.l.

j.s, but that he would not be certified to any agency desirous of employing an a.l.j. until the General Counsel resolved the annuity issue. No formal ruling was ever issued, but O.P.M. has conceded that Davis "was informally advised that the General Counsel had declined to recommend any change in the agency position that annuitants were ineligible for appointment". Brief for O.P.M., at 6. The within action ensued.

The district judge granted the government's motion for judgment on the pleadings, having concluded that the O.P.M. "interpretation of 5 U.S.C. §§ 3323(b) and 7521 ... should be upheld".

The court also rejected Davis's reliance on 5 U.S.C. § 559 of the A.P.A., which mandated that no subsequent statute should be held to modify the A.P.A. unless "it does so expressly". The judge below noted that, while § 3323(b) providing for the removal of annuitants at the will of the agency was enacted subsequent to the A.P.A. provision in § 7521 granting good cause tenure to a.l.j.s, the two provisions were not necessarily in discord. The district court noted that § 3323(b) was intended "to increase the opportunities for [annuitant] reemployment subject to the condition that it be on an at-will basis",[1] while "[t]he purpose of § 7521 is to give A.L.J.s ... independence and tenure rights that insulate them from possible agency influence or control". The lower court concluded that, "[i]f plaintiff were to be given a normal A.L.J. appointment, removable only for cause, the provision of § 3323(b) that the annuitant serve only at 'the will of the appointing authority' would be violated. If plaintiff were to be appointed to serve at will, then the protections of § 7521 and the independence it strives to assure would be lost".

The lower court held that O.P.M.'s interpretation that annuitants are not eligible for appointment to permanent administrative law judge positions effectuated the intent of both congressional enactments im-plicated by the complaint. According judicial deference to the agency's reasonable construction of statutes it is charged with enforcing, the district judge upheld the O.P.M. policy as not in derogation of the law.

Addressing Davis's age discrimination claim, the court concluded that his admitted failure to comply with the statutory prerequisite of an A.D.E.A. suit by filing a complaint or notice of intent to sue prior to instituting the lawsuit barred the action. The district judge thereby rejected Davis's assertion that letters he sent to the Commission with respect to his application met the statutory demands. The judge below held that "the letters are far from being explicit enough to charge the Commission with knowledge of an intent to bring an action under the A.D.E.A." and, that it "is not at all inequitable to require plaintiff, an attorney, to comply with the clear statutory mandate".

Finally, the district judge dismissed Davis's argument that past policies respecting limited reemployment of annuitant a.l.j.s established the impropriety of the current policy. Those past policies were discerned to have provided extraordinary measures for emergency situations whereunder an a.l.j. retires with a case backlog; the policy in such circumstances was to authorize temporary reappointment of the retired a.l.j. to permit completion of the cases on the docket.

On appeal, Davis has challenged the district court's legal conclusions in each of the above holdings.

■ Primarily, Davis has challenged the propriety of the O.P.M. interpretation of statutory provisions relative to civil service employment and reemployment. Therefore, the appellate issue is whether the O.P.M.'s interpretation of the statutes is reasonable. *See generally Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472–73, 45 L.Ed.2d 522 (1975); *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13

---

1. Prior to the passage of the at-will provision of § 3323 in 1956, civil service annuitants were generally barred from federal reemployment after age 60.

L.Ed.2d 616 (1965); *Young v. T.V.A.*, 606 F.2d 143, 145 (6th Cir.1979) *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 776 (1980). As stated by Judge Weick writing for the Sixth Circuit in *Young v. T.V.A.:*

> In considering the legality of agency action under an enabling statute, we do not write on a clean slate. Ordinarily, a court should give great weight to the frequent, consistent, and long standing construction of a statute by an agency charged with its administration. Particularly this is true with respect to a statute which is reasonably susceptible of two different interpretations. The construction of a statute by those agencies charged with its execution should be followed unless there are compelling indications that it is wrong....

606 F.2d at 145 (citations deleted). To sustain the agency's interpretation, the court "need not find that its construction is the *only* reasonable one", *Udall v. Tallman, supra,* 380 U.S. at 16, 85 S.Ct. at 801 (emphasis supplied), but only that it is a reasonable and not a compelling incorrect interpretation. *See, e.g., id.; Young v. T.V.A., supra.* Moreover, insofar as this action has involved two separate congressional enactments which appear to intersect and, potentially, conflict, it is important to note that the prescribed rule of statutory construction is that the court must labor to permit the survival of both enactments if possible. *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) (quoting *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939)).

■ Prior to the 1956 enactment of 5 U.S.C. § 3323(b), civil service annuitants were largely barred from reemployment by the federal government.[2] As relevant to this appeal, § 3323(b) stated:

> Notwithstanding other statutes, an annuitant ... is not barred by reason of his retired status from employment in an appointive position for which he is quali-

fied. An annuitant so reemployed serves at the will of the appointing authority.

Under the applicable version of § 3323(b), then, the "at will" annuitant may be discharged for no reason, or for less than good cause. *See generally Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

Pursuant to § 7521 of the A.P.A. (enacted June 10, 1946), an administrative law judge can be removed "for good cause established" and is entitled to a hearing on the record. By protecting the tenure of the a.l.j. in this manner, Congress obviously intended to insulate and protect the judges from agency influence and manipulation. *See Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 73 S.Ct. 570, 97 L.Ed. 872 (1953).

■ O.P.M. has urged that § 3323(b) and 7521 together pretermit the eligibility of annuitants for permanent a.l.j. positions. Contrarily, Davis has reiterated his argument, presented below, that the § 3323(b) mandate permitting reemployment of an annuitant in any position "for which he is qualified" permits the appointment of annuitants to an a.l.j. post. Thereafter, Davis has argued, the "for cause" provision of the A.P.A. would act to obviate the second sentence of § 3323(b), which qualifies the character of the annuitant-appointee's employment as one "at will".

Davis has divined support for his theory in the A.P.A.'s stricture that no subsequent statute may be held to supercede, modify, or undermine its provisions "except to the extent that such legislation shall do so expressly". 5 U.S.C. § 559. Thus, Davis has urged, because the "at will" provision of § 3323(b) antedates the A.P.A. "for cause" provision, it must be concluded, *per* § 559, that annuitants may be appointed to permanent a.l.j. positions subject only to removal for cause.

---

**2.** From 1926 to 1948, annuitants were *absolutely* barred from reemployment. In 1948, the bar was qualified to permit reemployment under restrictive circumstances. The 1956 Act, therefore, represents a quantum expansion of the reemployment prospects for civil retirees.

The O.P.M.'s response is more cogent. Under § 3323(b) the threshold issue, according to the O.P.M., is whether Davis is qualified for a permanent a.l.j. position. Because § 3323(b) restricts the nature of Davis's reemployment rights to "removable at will" positions and, because the A.P.A. mandates a.l.j.s be removable only for cause, Davis, as an annuitant, is *not qualified* for appointment to the permanent a.l.j. position. The district court persuasively reasoned that O.P.M.'s interpretation was legitimate insofar as it gave full effect to § 3323(b) *and* § 7521.

Davis' view, on the other hand, would amount to a repeal of the stipulation in § 3323(b) that annuitants are subject to "at will" dismissal.

Review of the predecessor enactments to § 3323(b) lends support to the O.P.M. construction. As previously noted (see n. 2), civil service annuitants were at one time absolutely precluded from federal reemployment. Subsequent enactments gradually removed restrictions on their reappointment, the most recent being the one now under review. In view of the history of an evolutionary and purposeful legislative expansion of an annuitant's federal reemployment opportunity, the language of § 3323(b) limiting annuitant reappointment to service at will must be viewed as a continuation and remnant of the long standing disabilities imposed on the reemployment opportunity of federal retirees. Congress has made the decision to perpetuate this qualification and Davis's attempt to utilize the qualification to create a "conflict" with the A.P.A. removal provision, and thus obviate the § 3323(b) limitation itself, is a perversion of the limited reemployment rights granted annuitants. Accession to Davis's argument would be an unwarranted judicial expansion of an intentionally restricted congressional enactment.

Recent legislative activity surrounding § 3323(b) of Title 5 also tends to support the interpretation advanced by O.P.M. In 1980, the Congress was made aware of the potential interpretive conflict between the civil service and administrative procedure acts. The House Committee on Post Office and Civil Service reported bill No. H.R. 6768 to the entire house. The bill would have removed the disability imposed on the reappointment of civil service annuitants to tenured a.l.j. posts. *See* H.R. No. 96–1186, 96th Cong., 2d Sess. 2–4 (1980). The Committee had been tendered O.P.M.'s interpretation of § 3323(b). *See* Hearings Before the Subcommittee on Investigations of the Committee on Post Office and Civil Service, House of Representatives, 96th Cong., 2d Sess. 26, 37 (1980). H.R. 6768 failed for lack of congressional action.

Subsequently, on March 2, 1984, the Congress amended § 3323 by retaining the "at will" provision, but expanding the opportunity for reappointment of former administrative judges, for definite terms, excepting them from the "at will" restrictions.

 It is, of course, well settled that the views of subsequent congressional sessions are not reflective of the appropriate interpretation of statutes enacted by an earlier assembly of law makers. *E.g., United States v. Wise*, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962). However, when an agency alerts the Congress of its statutory interpretation of existing legislation, and the legislature does not alter the tendered interpretation when provided the opportunity to do so, then courts must presume that the agency has correctly discerned the legislative intent. *See generally North Haven Board of Education v. Bell*, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). The congressional failure to amend § 3323 to remove the bar raised by O.P.M.'s construction, and the subsequent decision to *partially* remove that restriction, is certain evidence that the Congress is in accord with the O.P.M. view and is desirous of maintaining the restriction.

The district court accorded O.P.M.'s interpretation the appropriate deference because O.P.M.'s view of § 3323(b) is facially reasonable, does not contravene the purposes of any other statute, and there are no "compelling indications that it is wrong". Accordingly, the construction of

§ 3323(b) adopted by the district court must be affirmed.

 Davis has also challenged the lower court's conclusion that his age claim was statutorily barred for failure to give prior notice. He has urged that he advanced a conflict between the O.P.M. policy and the A.D.E.A. in his initial application letters. This, he has argued, should have been sufficient to communicate a possible A.D.E.A. violation and thus satisfy the notice requirement of the Act.

The A.D.E.A. requires an individual complaining of age discrimination in federal employment to file an administrative complaint with the employing agency. 29 U.S.C. § 633a(d). The district court held that Davis's claim that the O.P.M. policy violated the A.D.E.A. was barred because his letters to the O.P.M. in connection with his application were insufficient "to charge [O.P.M.] with knowledge of an intent to bring an action under the A.D.A.".

While Davis's letters to the agency referred to a possible conflict between the agency's policy and the A.D.E.A., they did not state a complaint of age discrimination. The letters served only to initiate Davis's application. Therefore, at the time the letters were sent he could not have notified the agency of a cause of action, namely, the rejection of his application, which only arose subsequent to his letters. Additionally, as noted by the district court, it would not be iniquitous to enforce the specific notice requirements of the Act against Davis, an attorney.

 Finally, a decision that the annuitant appointment policy violates the A.D.E.A., after determining that the policy was a reasonable construction of statutory enactments, would require a finding that Congress implicitly intended the A.D.E.A. to repeal § 3323(b) of Title 5. Such repeals by implication are not favored. *T.V.A. v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). Instead, the "intention ... to repeal 'must be clear and manifest.'" *Morton v. Mancari*, 417 U.S. at 551, 94 S.Ct. at 2483 (quoting *United States v. Borden, supra*). Relevantly, when it passed the A.D.E.A., Congress explicitly repealed only two statutes (5 U.S.C. § 3322 which limited federal employment of persons over 70 to temporary positions; and 5 U.S.C. § 8335, which provided mandatory retirement at age 70), which supports an inference that other federal employment acts were not intended to be repealed. Therefore, the O.P.M. is entitled to the presumption that § 3323(b) remains a valid enactment and that the agency's reasonable interpretation of the statute is not violative of the A.D.E.A.

Consistent with the foregoing, the district court's well-reasoned decision is hereby AFFIRMED. Each party will bear its own costs on the appeal.