*602
 
 RICH, Circuit Judge.
 

 Decision
 

 Samuel F. Vesser, Jr. petitions for review of the decision of the Merit Systems Protection Board (Board), Docket No. AT300A9110448, in
 
 Samuel F. Vesser, Jr. v. Office of Personnel Management,
 
 57 M.S.P.R. 648 (1993), affirming the Office of Personnel Management’s (OPM) removal of Mr. Vesser’s name from the register of Administrative Law Judge (ALJ) candidates because Mr. Vesser’s status as an annuitant disqualified him from employment as an ALJ. We
 
 reverse.
 

 Background
 

 Mr. Vesser, a former administrative judge, voluntarily retired from federal service on October 31, 1990. Upon retirement, Mr. Vesser filed for and received a retirement annuity. Before Mr. Vesser retired, he was examined by OPM and found qualified for consideration as an ALJ. Subsequently, OPM certified his name for consideration for an ALJ position with the Office of Hearings and Appeals of the Social Security Administration (SSA), Department of Health and Human Services. Mr. Vesser was interviewed for a possible hiring with the SSA.
 

 Mr. Vesser was not offered an ALJ position because during the hiring process OPM notified SSA that Mr. Vesser’s name had been removed from the list of eligible ALJ candidates as he was a retiree receiving an annuity and was, for that reason, statutorily barred from returning to federal service as an ALJ. On March 19,1991, Mr. Vesser was advised by SSA that OPM had determined that he was ineligible for an ALJ position because of his status as an annuitant. Mr. Vesser contacted OPM seeking an explanation of the determination of ineligibility. OPM advised Mr. Vesser that an individual appointed to an ALJ position is given an absolute appointment, removable only for cause, whereas an individual hired as a reemployed annuitant serves at the will óf the agency. Seeing these as inconsistent, OPM adopted the position that a reemployed annuitant cannot be appointed to an ALJ position.
 

 Mr. Vesser advised OPM that were he selected as an ALJ he would waive his annuity and thus render inapplicable OPM’s position, making himself eligible for an ALJ appointment. OPM, however, disagreed and determined that waiver of his annuity would not change Mr. Vesser’s status as an annuitant.
 

 On April 6, 1991, Mr. Vesser appealed OPM’s decision to the Board pursuant to 5 C.F.R. § 300.104(a), alleging that OPM committed an employment practice violation and engaged in age discrimination in removing his name from the register of eligible ALJ candidates.
 
 [2]
 

 On April 12, 1991, the Board’s Chief Administrative Law Judge (CALJ) issued an Acknowledgment Order raising the question of whether the Board had jurisdiction over Mr. Vesser’s appeal. After Mr. Vesser and the OPM responded, the CALJ issued an Order, on June 5, 1991, finding that the Board had jurisdiction over Mr. Vesser’s appeal. On June 25, 1991, the CALJ issued a second Order responding to OPM’s request for reconsideration of the June 5,1991 Order and denying OPM’s request for interlocutory review of the jurisdiction question.
 

 In a first Initial Decision dated September 10, 1991, the CALJ determined that OPM had violated an employment practice in disqualifying Mr. Vesser from competing for appointment as an ALJ, but that Mr. Vesser failed to make out a valid claim of age discrimination. In a second Initial Decision dated December 19, 1991 the CALJ addressed the appropriate remedy and ordered that Mr. Vesser’s name be returned to the register of eligible ALJ candidates. On June 10, 1993, the full Board issued its final Opinion and Order holding that it had jurisdiction to hear Mr. Vesser’s appeal under 5 C.F.R. part 300. The Board reversed the CALJ and upheld OPM’s determination that Mr. Vesser’s annuitant status disqualified him for appointment as an ALJ.
 

 
 *603
 
 Mr. Vesser appealed the Board’s decision to this court on June 28, 1998. We have jurisdiction under 5 U.S.C. § 7703(b)(1) (1988).
 

 DISCUSSION
 

 We review Board decisions to determine whether they are:
 

 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 

 (2) obtained without procedures required by law, rule, or regulation having been followed; or
 

 (3) unsupported by substantial evidence
 

 5 U.S.C. § 7703(e) (1988).
 

 Jurisdiction
 

 This Court reviews jurisdiction, a question of law,
 
 de novo. Dehne v. United States,
 
 970 F.2d 890, 892 (Fed.Cir.1992). Consequently, we review
 
 de novo
 
 the question of whether the Board has jurisdiction to adjudicate a ease.
 
 See Cruz v. Department of Navy,
 
 934 F.2d 1240, 1243-44 (Fed.Cir.1991) (en bane).
 

 The Government asserts that the Board lacked jurisdiction to entertain Mr. Vesser’s appeal because Mr. Vesser’s disqualification from reemployment as an ALJ was the result of a statutory bar and not the result of an agency hiring practice. According to the Government, this distinction is significant because it is only the latter that may be termed an “employment practice” as defined in 5 C.F.R. § 300.101, the misapplication of which may be appealed to the Board under 5 C.F.R. § 300.104.
 

 Employment practices are defined in the regulations to include “the development and use of examinations, qualification standards, tests, and other measurement instruments.” 5 C.F.R. § 300.101. The threshold issue, therefore, is whether the action taken is an employment practice within the meaning of the regulations. The Government urges a narrow interpretation of employment practices as being the kinds of “measurement instruments” that determine a candidate’s ability to perform the duties and responsibilities of a job, such as the examination that found Mr. Vesser qualified to be considered for an ALJ position.
 

 However, as noted by the Board, this Court held in
 
 Dowd v. United States,
 
 713 F.2d 720 (Fed.Cir.1983), that the term employment practices has a “naturally broad and inclusive meaning.” Additionally, in direct contrast to the Government’s contention, the Court in
 
 Dowd
 
 stated that “the inclusive definition of employment practices cannot reasonably be read to apply narrowly to tests alone.”
 
 Dowd,
 
 713 F.2d at 724.
 

 As noted above, employment practices include qualification standards. Applying the requisite broad and inclusive meaning to the term employment practices, we hold that the Board, in removing Mr. Vesser’s name from the register of eligible ALJ candidates based on his status as an annuitant, used a qualification standard under 5 C.F.R. § 300.101. We accordingly agree with the Board that an employment practice was applied.
 

 The second step in the jurisdiction analysis is whether the application of the employment practice violates a “basic requirement” because only those who believe that an employment practice has been applied to him in a manner that violates a “basic requirement,” as defined in 5 C.F.R. § 300.103, are entitled to appeal to the Board. 5 C.F.R. § 300.104. Section 300.103, entitled “Basic requirements,” mandates that an employment practice be (a) based on a “job analysis” that sets forth the duties of and qualifications for the position, (b) relevant to performance in the position, and (c) not discriminatory.
 
 Dowd,
 
 713 F.2d at 722, n. 9.
 

 In fact, § 300.103(a)(3) sets forth that employment practices of the Federal Government be based on a job analysis including the “factors that are important in evaluating candidates.” Mr. Vesser’s status as an annuitant was not only an important but a determinative factor in OPM’s evaluation of him as an ALJ candidate. We therefore hold that a basic requirement as defined in section 300.-103 was involved in the removal of Mr. Ves-ser’s name from the ALJ register.
 

 
 *604
 
 For the reasons set forth above, we hold that Mr. Vesser was entitled to appeal the removal of his name from the register of eligible ALJ candidates because such action was an employment practice that may violate a basic requirement as defined in § 300.103. The Board therefore correctly determined that it had jurisdiction over this appeal. We now turn to the merits of Mr. Vesser’s appeal.
 

 Merits
 

 The gravamen of this appeal is the proper interpretation of the statutory provision, 5 U.S.C. § 3328(b)(1), and whether, when considering 5 U.S.C. § 7521, Mr. Ves-ser is precluded from being reemployed as an ALJ. Our review of the meaning of the statutory language is
 
 de novo. Frederick R. Marano v. Department of Justice,
 
 2 F.3d 1137, 1138 (Fed.Cir.1993). We review the Board’s conclusions of fact for substantial evidence.
 
 Association of Data Processing Serv. Organizations v. Board of Governors of Federal Reserve Sys.,
 
 745 F.2d 677, 685 (D.C.Cir.1984);
 
 Robert A. Perske v. Office of Personnel Mgmt.,
 
 25 F.3d 1014, 1017 (Fed.Cir.1994).
 

 In interpreting a statute, we first examine its language to determine whether Congress has “directly spoken to the precise question at issue.”
 
 Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
 
 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If the intent of Congress is clear, that is the end of the matter because we must give effect to the unambiguously expressed intent of Congress.
 
 Id.
 
 at 842-43, 104 S.Ct. at 2781-82. Thus, we begin our analysis with the wording of the applicable statutes.
 

 Section 3323(b)(1) sets forth that
 

 notwithstanding other statutes, an annuitant, as defined by section 8331, receiving annuity from the Civil Service Retirement and Disability Fund is not barred by reason of his retired status from employment in an appointive position for which the annuitant is qualified. An annuitant so reemployed ... serves at the will of the appointing authority.
 

 5 U.S.C. § 3323(b)(1) (1988).
 

 An annuitant is defined as “a former employee or Member who, on the basis of his service, meets all requirements of this sub-chapter for title to annuity and files claim therefor.” 5 U.S.C. § 8331(9).
 

 Finally 5 U.S.C. § 7521 states that “[a]n action may be taken against an administrative law judge ... by the agency in which the administrative law judge is employed only for good cause established and ... after opportunity for hearing before the Board.”
 

 It is undisputed that Mr. Vesser voluntarily retired from Federal service and filed a claim for a retirement annuity. Mr. Vesser in fact received and in all likelihood still receives a retirement annuity. Therefore, because Mr. Vesser met all the requirements for an annuity and filed a claim therefor, Mr. Vesser is an annuitant as defined in § 8331(9).
 

 However, whether Mr. Vesser is labeled an annuitant does not completely answer the question, which properly is whether Mr. Ves-ser falls within the provisions of § 3323(b)(1) which require him to be reemployed at the will of the appointing agency and ostensibly prevent him from being reemployed as an ALJ, removal from such an appointment being only for cause. 5 U.S.C. § 7521.
 

 Mr. Vesser offered to waive his annuity arguing that such waiver would prevent him from being “an annuitant receiving annuity” under § 3323(b)(1). As such, according to Mr. Vesser, the restriction that he serve at the will of the appointing agency would not apply and he would be free to serve as an ALJ.
 

 Once Mr. Vesser waives his annuity, he will no longer be receiving an annuity. By the very words of the statute then, he will no longer fall within § 3323(b)(1) which explicitly and unambiguously recites that an annuitant, which Mr. Vesser is,
 
 receiving annuity,
 
 serves at the will of the appointing authority. Upon waiver of his annuity, thus, Mr. Vesser will not be required to be an at will employee.
 

 The Government contends that simply as an annuitant, Mr. Vesser may only
 
 *605
 
 be reemployed by a Federal agency on an at will basis and is therefore forever barred from reemployment as an ALJ. However, as explained above, it is not solely Mr. Vesser’s status as an annuitant that is at issue because annuitant in the statute is modified by the term “receiving annuity.” In our view, the Government asks us, in effect, to read the words “receiving annuity” out of the statute. This we cannot do because it is a “settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect.”
 
 United States v. Nordic Village, Inc.,
 
 — U.S. -, -, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992) and
 
 Bowsher v. Merck & Co.,
 
 460 U.S. 824, 833, 103 S.Ct. 1587, 1593, 75 L.Ed.2d 580 (1983). The Government’s construction of § 3323(b)(1) does not give any “operative effect” to the words “receiving annuity” in the statute and therefore must be rejected.
 
 [3]
 

 Our interpretation of § 3323(b)(1) is also consistent with applicable regulations, specifically 5 C.F.R. § 210.102(b)(13) which defines a reemployed annuitant as “an employee whose annuity under subchapter III of chapter 83 of title 5, United States Code, was
 
 continued
 
 on reemployment in an appointive position on or after October 1, 1956.” [emphasis added.] It is clear that in both § 3323(b)(1) and § 210.102(b)(13), the actual receipt of the annuity is significant with regard to the status of a reemployed individual.
 

 We also note that this interpretation- of § 3323(b)(1) is not inconsistent with
 
 Davis v. Devine,
 
 736 F.2d 1108 (6th Cir.),
 
 cert. denied,
 
 469 U.S. 1020, 105 S.Ct. 436, 83 L.Ed.2d 362 (1984), the only reported case addressing the interaction between §§ 3323(b)(1) and 7521. In that case, the Sixth Circuit affirmed OPM’s determination that reading §§ 3323(b)(1) and 7521 together, an annuitant was precluded from being appointed an ALJ, removable only for cause, because under § 3323(b)(1) such reappointment had to be at will.
 

 While appearing quite similar to the instant appeal,
 
 Davis
 
 is easily distinguishable because nowhere in
 
 Davis
 
 does the court indicate or address waiver of the annuity. Rather, it appears that in
 
 Davis,
 
 there was no waiver offer. In fact, the court first described Davis as “a former federal employee who receives a civil service annuity” and in another portion of its opinion expressly stated that Davis “received and continues to receive an annuity reflecting his civilian and military employment.”
 
 Davis,
 
 736 F.2d at 1110. Because
 
 Davis
 
 would continue to receive an annuity and therefore continue to fall within the explicit language of § 3323(b)(1), his employment could only be “at will,” thereby precluding his reappointment, or his consideration, as an ALJ.
 

 Finally, our interpretation of § 3323(b)(1) does not impugn the independence of ALJs. Pursuant to § 7521, an ALJ can be removed “for good cause established” and is entitled to a hearing on the record. By protecting the tenure of the ALJ in this manner, Congress obviously intended to insulate and protect the judges from agency influence and manipulation. See
 
 Ramspeck v. Federal Trial Examiners Conference,
 
 345 U.S. 128, 73 S.Ct. 570, 97 L.Ed. 872,
 
 reh’g denied,
 
 345 U.S. 931, 73 S.Ct. 778, 97 L.Ed. 1360 (1953). We recognize the importance of the decisional independence of ALJs and agree that an ALJ may not be placed, or cannot place himself, in a position where he would be removable “at will” for that would conflict with the “good cause” requirement of § 7521.
 

 However, we do not believe that the policy of insulating and protecting ALJs will be compromised in a situation in which in order to be placed on the register of ALJ candidates an annuitant must agree to waive, if
 
 *606
 
 appointed, any annuity he is currently receiving or will be eligible to receive. We believe this strikes the proper balance between the statutory language and the decisional independence of ALJs. Indeed, a waiver, which we understand was offered by Mr. Vesser, would promote the independence of such an individual.
 

 The Government concedes that Mr. Vesser has the right to waive his annuity, but emphasizes that such a waiver is revocable. Indeed, under 5 U.S.C. § 8845(d)
 

 [a]n individual entitled to annuity from the Fund may decline to accept all or any part of the annuity by a waiver signed and filed with the Office of Personnel Management. The waiver may be revoked in writing at any time. Payment of the annuity waived may not be made for the period during which the waiver was in effect.
 

 5 U.S.C. § 8345(d) (1988).
 

 According to the Government, Mr. Vessels statutory right to revoke a waiver of his annuity prevents him from altering his status as an annuitant. Moreover, the Government maintains, Mr. Vesser does not have the statutory right -to terminate his annuity, available in other situations not relevant to this appeal.
 
 See
 
 5 U.S.C. §§ 8337(d), 8344(a), and 8344(b).
 

 Termination of an annuity in certain other situations is not relevant to this appeal. Moreover, we do not see that the dire results predicted by the Government will accrue from the revocability of the annuity waiver. Revocation of an annuity waiver by an ALJ, we believe, could be the basis for disqualification and removal under the for cause Standard of § 7521.
 

 The Board held that Mr. Vesser’s interpretation of the statute would lead to the result that upon waiving his annuity an annuitant who had not previously been employed as an ALJ could encumber an ALJ position from which he could only be removed for cause, while former ALJ’s would have only the limited reemployment rights set forth in 5 U.S.C. § 3323(b)(2). The Board indicated that such a construction would impermissibly expand the scope of § 3323 and, as the Government argues, would judicially repeal the distinction between ALJ and non-ALJ annuitants created by Congress. We do not agree.
 

 Section 3323(b)(2) provides in part that
 

 any annuitant to whom the first sentence of paragraph (1) of this subsection applies and who has served as an administrative law judge ... may be reappointed an administrative law judge ... for a specified period or for such period as may be necessary for such administrative law judge to conduct and complete the hearing and disposition of one or more specified cases.
 

 5 U.S.C. § 3323(b)(2) (1988).
 

 The first sentence of § 3323(b)(2) explicitly specifies that the restrictions set forth therein apply to “any annuitant to whom the first sentence of paragraph (1)” § 3323(b)(1) applies. That first sentence of § 3323(b)(1), as set forth above, pertains to “an annuitant ... receiving annuity.” Thus, the limitations of § 3323(b)(1) parallel those of § 3323(b)(2), both addressing the reemployment rights of annuitants receiving annuity. Accordingly, our interpretation of § 3323(b)(1), as applicable to § 3323(b)(2), maintains the distinction adopted by Congress between ALJ and non-ALJ annuitants receiving an annuity.
 

 Conclusion
 

 We hold that the Board’s interpretation of the applicable statutes was unreasonable. For this reason, we reverse the decision of the Board.
 

 Costs
 

 Each party shall bear its own costs.
 

 REVERSED.
 

 [2]
 

 . On July 15, 1993, Mr. Vesser filed a notice of abandonment of his discrimination claim in this court.
 

 [3]
 

 . The Board finds it significant that the “receiving annuity” language was not in the statute when Congress originally provided for at will reemployment of annuitants and contends that there is no indication that Congress intended to distinguish between annuitants who were receiving annuities and those who had waived their annuities. [A9] The simple fact is, however, that Congress did add these words to the statute and they must be given effect. Moreover, when statutory interpretation is at issue, the plain and unambiguous meaning of a statute prevails in the absence of clearly expressed legislative intent to the contrary.
 
 See Mansell v. Mansell,
 
 490 U.S. 581, 592, 109 S.Ct. 2023, 2030, 104 L.Ed.2d 675 (1989). Further, only the "most extraordinary showing of contrary intentions” would lead us to disregard the plain meaning of the statute.
 
 Garcia v. U.S.,
 
 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984).